CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 09, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Robert Lambraia<br><br>and<br><br>Melanie Hadsock Lambraia,<br><br>Plaintiffs,<br><br>v.<br><br>Nissan North America, Inc.,<br><br>Defendant. | Civil Action No. 5:24-cv-00052 |

**MEMORANDUM OPINION**

Plaintiffs Robert and Melanie Hadsock Lambraia filed this action against Defendant Nissan North America, Inc. ("Nissan") under the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code Ann. § 59.1-207.9 *et seq.* (the "Virginia Lemon Law"), and the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* They allege that Nissan and its dealership agents repeatedly failed to correct a defect with the transmission of their 2024 Nissan Titan and thus failed to conform the vehicle to its warranty. They brought this suit to recover the purchase price of the vehicle and related costs, as well as attorney's fees.

This matter is before the court on the Lambraias' motion for partial summary judgment on their Virginia Lemon Law claim (Dkt. 20). For the following reasons, the Lambraias' motion will be denied.

## I. Background

**A. Factual History**

The following material facts are taken from the summary judgment record and, unless otherwise stated, are undisputed.

On October 14, 2023, Robert and Melanie Hadsock Lambraia purchased a 2024 Nissan Titan pickup truck from Southern Team Automall, an authorized Nissan dealer in Roanoke, Virginia. (Pls.' Ex. 1, Decl. of Robert Lambraia ¶ 1 (Dkt. 21-1) [hereinafter "Lambraia Decl."].) The total delivery price of the vehicle was $62,028.45. (*Id.*; Lambraia Decl. Ex. 1.) Nissan provided a five-year, 100,000-mile warranty for the vehicle. (Lambraia Decl. ¶ 1.)

On November 20, 2023, Mr. Lambraia returned the vehicle to Southern Team Automall for service. (*Id.* ¶ 2; *see* Lambraia Decl. Ex. 2.) He reported that the vehicle "would suddenly lurch forward and make a clunky sound" when slowing to a stop. (Lambraia Decl. ¶ 2; *see* Lambraia Decl. Ex. 2.) The repair order for the service visit indicates that the condition occurred when the transmission down-shifted and states that the "customer concern" was "[d]uplicated."[1] (Lambraia Decl. Ex. 2.) The mechanics who checked the vehicle "found this operation to be normal" based on "a case data base search." (*Id.*)

On February 13, 2024, Mr. Lambraia took the vehicle for service at CMA's Valley Nissan in Staunton, Virginia, which is another Nissan dealership. (Lambraia Decl. ¶ 4; *see* Lambraia Decl. Ex. 3.) He reported that the vehicle "lunges forward when coming to a stop" and asked the dealership to check on the issue. (Lambraia Decl. Ex. 3.) Mechanics test-drove

---

[1] It is not entirely clear whether the reference to a "duplicated" concern indicates that mechanics confirmed the condition existed or that multiple customers had reported the same condition.

the vehicle and checked Nissan's "tech line," concluded that the condition was "normal" for a nine-speed transmission, and did not perform any repairs. (Lambraia Decl. ¶ 4; Lambraia Decl. Ex. 3.)

Mr. Lambraia called Nissan's consumer helpline on February 16, 2024, to discuss the issue. (Lambraia Decl. ¶ 8; *see* Def.'s Ex. 2, Tr. of Conversation Between Nissan Representative and Robert Lambraia (Dkt. 22-2) [hereinafter "Call Tr."].) He spoke to a Nissan representative, who told him that Nissan was aware of the transmission condition and did not have a repair solution, but that the company would notify him if it developed one. (*See* Call Tr. at 7, 11–13.) Lambraia asked if Nissan would repurchase or replace the vehicle, but the representative told him a repurchase or replacement was not possible. (*Id.* at 1.) Nissan also sent Mr. Lambraia a letter, dated February 16, 2024, which confirmed that Nissan was "not in the position to repurchase [the] vehicle at this time" and invited him to request assistance from Auto Line, a third-party complaint resolution program operated by the Council of Better Business Bureaus. (Lambraia Decl. Ex. 8.)

Mr. Lambraia took the vehicle to CMA's Valley Nissan a second time on April 3, 2024. (Lambraia Decl. ¶ 5; Lambraia Decl. Ex. 4.) The repair order for that visit states that Mr. Lambraia reported the "vehicle seems to jerk" "when coming to a stop" and that he previously had brought the vehicle in for the "same concern." (Lambraia Decl. Ex. 4.) The repair order then states that mechanics "checked tech line several concerns but no fix at this time." (*Id.*) The service department "opened a case with Nissan" but was "waiting to hear back" as of the service date. (*Id.*) The Lambraias' vehicle was under warranty at the time of all service visits. (*See id.*)

A National Highway Traffic Safety Administration ("NHTSA") database contains complaints describing the same transmission downshift issues with 2024 Nissan Titans. (*See* Lambraia Decl. Ex. 7.) In 2022, Nissan issued two technical service bulletins addressing "transmission shift quality improvements" for 2021 Nissan Titans with nine-speed transmissions, which applied if customers had "dissatisfaction with shifting during deceleration," re-acceleration, or when "when coming to a stop." (Lambraia Decl. Exs. 5–6.)

**B. Procedural History**

The Lambraias filed suit in this court on July 19, 2024, alleging violations of the Virginia Lemon Law and Magnuson-Moss Warranty Act. (Compl. ¶¶ 11–23 (Dkt. 1).) They seek to recover the purchase price of the vehicle, as well as finance charges, incidental costs, and $10,000 for inconvenience and loss of use. (*Id.* at 5.) They also request attorney's fees. (*Id.* at 5–6.)

Nissan answered the complaint on August 13, 2024. (Dkt. 3.) Following discovery, the Lambraias filed a motion for partial summary judgment, asking the court to award them judgment on the issue of Nissan's liability under the Virginia Lemon Law.[2] (Dkt. 20.)

## II.   Standard of Review

Under Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] The Lambraias do not move for summary judgment on the amount of damages recoverable under the Virginia Lemon Law. (*See* Pls.' Mem. in Supp. of Mot. for Summ. J. at 12 (Dkt. 21).)

- 4 -

U.S. 242, 248 (1986). A dispute is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022). Thus, summary judgment is appropriate only if the court determines that "no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990); *see also Anderson*, 477 U.S. at 250 (explaining that courts must grant summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict").

When evaluating a motion for summary judgment, the court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, the nonmoving party must come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In determining whether a genuine issue of material fact exists, the court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013).

### III.    Analysis

**A. The Virginia Lemon Law**

The Virginia Lemon Law is intended to protect consumers of motor vehicles by requiring manufacturers, their agents, and their authorized dealers to respond to good-faith

warranty complaints and promptly make repairs necessary to conform a vehicle to all applicable warranties. *See* Va. Code Ann. §§ 59.1-207.10, 59.1-207.12.

To effectuate this purpose, the statute requires a manufacturer to provide the consumer with a replacement vehicle or a refund

> [i]f the manufacturer, its agents or authorized dealers do not conform the motor vehicle to any applicable warranty by repairing or correcting any defect or condition, including those that do not affect the driveability of the vehicle, which significantly impairs the use, market value, or safety of the motor vehicle to the consumer after a reasonable number of attempts [within 18 months of the original delivery of the motor vehicle to the consumer]."

*Id.* § 59.1-207.13(A). A consumer who suffers losses because a manufacturer fails to comply with this provision may bring a civil action to enforce it. *See id.* § 59.1-207.14.

The statute outlines three scenarios that trigger a presumption that a vehicle is "significantly impaired" and a "reasonable number of attempts" have been made to conform the vehicle to a warranty. Two of those scenarios are potentially relevant here. They apply if, in the 18 months after delivery:

1. The same nonconformity has been subject to repair three or more times by the manufacturer, its agents or its authorized dealers and the same nonconformity continues to exist; [or]

2. The nonconformity is a serious safety defect and has been subject to repair one or more times by the manufacturer, its agent or its authorized dealer and the same nonconformity continues to exist[.]

*Id.* § 59.1-207.13(B). The statute defines a "nonconformity" as a "failure to conform with a warranty, a defect or a condition, including those that do not affect the driveability of the vehicle, which significantly impairs the use, market value, or safety of a motor vehicle." *Id.* § 59.1-207.11. A "significant impairment" is one that "render[s] the new motor vehicle unfit, unreliable or unsafe for ordinary use or reasonable intended purposes." *Id.*

- 6 -

**B. There is a genuine issue of material fact as to whether the Lambraias' vehicle has a "nonconformity" under the Virginia Lemon Law.**

Nissan does not contest that the Lambraias can establish most elements of their Virginia Lemon Law claim. Nissan does not dispute that it and its two dealerships are subject to the Virginia Lemon Law, that the Lambraias satisfied the consumer's notification obligations under the statute, or that their three service visits between November 2023 and April 2024 would qualify as a "reasonable number" of repair attempts. The only contested issue is whether the Lambraias' 2024 Nissan Titan has a "nonconformity"—that is, "a defect or condition [that] significantly impairs the [vehicle's] use, market value, or safety" by making it "unfit, unreliable or unsafe for ordinary use or reasonable intended purposes." *Id.* §§ 59.1-207.11, 59.1-207.13(A); *see, e.g.*, *Smith v. Gen. Motors Corp.*, 35 Va. Cir. 112, 1994 WL 1031403, at *4 (Va. Cir. Ct. Oct. 28, 1994) (stating that a vehicle must be "significantly impaired" to give rise to a claim under § 59.1-207.13(A)).

The court concludes that a genuine dispute of material fact precludes summary judgment on that issue. While the Lambraias have offered evidence that their vehicle lurches forward and makes a clunking sound when slowing down and down-shifting, (*see* Lambraia Decl. Exs. 2–4), the record is short on detail regarding the severity of the condition. Further, at least some evidence suggests the condition may not significantly affect the vehicle's operation. The repair orders for two of the service visits indicate that mechanics checked the vehicle and concluded the condition was "normal." (Lambraia Decl. Exs. 2–3.) While the facts in the record could support a finding that the Lambraias' vehicle had a "nonconformity" that triggers Nissan's obligations under § 59.1-207.13(A), they would not preclude a reasonable

jury from reaching the opposite conclusion, particularly when viewed in the light most favorable to Nissan.

The Lambraias have not provided any other evidence that demonstrates they are entitled to judgment as a matter of law. They rely primarily on Mr. Lambraia's declaration, which asserts that mechanics "verified the existence of a defect" during the April 3, 2024 service visit, that the transmission issue impedes the Lambraias' "ability to control or operate the vehicle for ordinary use," and that they have stopped driving the vehicle whenever possible due to safety concerns. (Lambraia Decl. ¶¶ 5, 10.) But courts may not grant summary judgment based solely on self-serving statements in a declaration submitted by the moving party. *E.g.*, *Pfaller v. Amonette*, 55 F.4th 436, 449–50 (4th Cir. 2022). The other evidence in the record does not necessarily show that the vehicle's condition meets the statutory definition of a "nonconformity," and, at this stage, the court cannot weigh Mr. Lambraia's credibility based on his statements.

Nor did the Nissan customer service representative acknowledge a qualifying "nonconformity" during the February 16, 2024 call with Mr. Lambraia. The representative did state that Nissan engineers were "aware there's something going on with vehicles jerking" and told Mr. Lambraia that engineers were trying to "fix the concern" but had not yet identified a solution. (Call Tr. at 7, 11–13; *see id.* at 1.) This evidence *could* support a finding that the Lambraias' vehicle had a qualifying "nonconformity," but it does not establish that conclusion as a matter of law.[3] The same is true of the Lambraias' other evidence. The two

---

[3] Nissan submitted two declarations in opposition to summary judgment. The first is from the service manager of CMA's Valley Nissan, Robert Migliaccio. (*See* Def.'s Ex. A, Decl. of Robert Migliaccio (Dkt. 22-1).) In it, Migliaccio asserts that the service department would not have told Mr. Lambraia that the vehicle had a defect during the April 3, 2024 service

- 8 -

technical service bulletins relate to an earlier, 2021 model of the Nissan Titan and do not describe the extent of the transmission down-shifting issues for that model. (*See* Lambraia Decl. Exs. 5–6.) The consumer complaints in the NHTSA database show that other consumers who purchased 2024 Nissan Titans reported experiencing similar lurching and clunking issues when decelerating. (*See* Lambraia Decl. Ex. 7.) While they appear to corroborate the Lambraias' reported concerns, the complaints about other 2024 Nissan Titans would not *compel* a reasonable jury to find that the Lambraias' vehicle has a "nonconformity" that triggers Nissan's repurchase or replacement obligations under the Virginia Lemon Law.

Finally, the Lambraias argue that the Virginia Lemon Law is a remedial statute that should be construed liberally in consumers' favor, and they emphasize that § 59.1-207.13(B) creates a presumption in favor of consumer relief. But that presumption requires the existence of a "nonconformity," Va. Code Ann. § 59.1-207.13(B), and whether the issues with the Lambraias' vehicle meet the statutory definition of a "nonconformity" is a factual question the jury must resolve. The Lambraias do not cite any authority applying the Virginia Lemon Law that suggests they are entitled to summary judgment here.

Based on the court's review of the summary judgment record, it is unable to determine that "no reasonable jury could find for [Nissan] on the evidence before it." *Perini*, 915 F.2d at

---

visit (contrary to Mr. Lambraia's statement in his declaration). (*Id.* ¶ 4.) Migliaccio also states that "the vehicle operation would have been deemed 'normal'" under the circumstances. (*Id.* ¶ 5.) The second declaration is from Peter Rusin, a District Technical Service Manager for Nissan. (*See* Def.'s Ex. C, Decl. of Peter Rusin (Dkt. 22-3).) Rusin asserts that the transmission condition in the Lambraias' vehicle "is characteristic of the vehicle, not a defect, as there is not a recall or Nissan bulletin associated with this complaint." (*Id.*) Rusin also states that Nissan has released a transmission software update that would potentially resolve the Lambraias' concerns and that a dealership could install the update in their vehicle free of charge. (*Id.* ¶¶ 3–4.) The Lambraias argue that these declarations are inadmissible because Migliaccio and Rusin are expert witnesses and Nissan failed to disclose their names during discovery, as required by Federal Rule of Civil Procedure 26(a). (*See* Pls.' Reply in Supp. of Mot. for Summ. J. at 1–2 (Dkt. 23).) The court need not resolve this issue, as the Lambraias are not entitled to summary judgment even if the court excludes Migliaccio and Rusin's declarations.

124. Accordingly, the Lambraias are not entitled to summary judgment on their Virginia Lemon Law claim.

## IV. Conclusion

For the reasons outlined above, the Lambraias' motion for partial summary judgment (Dkt. 20) will be **DENIED**. An appropriate Order will issue.

ENTERED this __9th__ day of April, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE